[No. 81164-4.   En Banc.]
Argued May 26, 2009.     Decided September 3, 2009.

THE STATE OF WASHINGTON, *Respondent*, v. KENNETH LEE KYLLO, *Petitioner*.

*Kenneth L. Kyllo*, pro se.

*Jeffrey E. Ellis* (of *Ellis Holmes & Witchley, PLLC*), for petitioner.

*Susan I. Baur, Prosecuting Attorney*, and *Michelle L. Shaffer, Deputy*, for respondent.

¶1 MADSEN, J. — The defendant maintains that trial counsel was ineffective because counsel misstated the law on self-defense in an instruction counsel proposed that was given to the jury and in statements made during closing argument about Kenneth Kyllo's self-defense claim. We agree and accordingly reverse Mr. Kyllo's conviction for second degree assault. We remand for retrial.

## FACTS

¶2 On June 12, 2004, while an inmate at the Cowlitz County Jail on other charges, defendant Kenneth Kyllo was involved in a fight with another inmate, Robert Mickens. Witnesses presented conflicting testimony about how the fight began and who started it, but in short, a fistfight occurred that ended when Kyllo "grabbed onto" Mickens and bit his ear off. II Verbatim Report of Proceedings (VRP) (Oct. 26-27, 2004) at 202-12.

¶3 On June 16, 2004, the State charged Kyllo with assault in the second degree, alleging that Kyllo had intentionally assaulted Mickens and had recklessly inflicted substantial bodily harm on Mickens. Kyllo claimed he acted in self-defense. The jury was instructed that a person is entitled to act in self-defense when he reasonably believes he is about to be injured and when the force used is not more than is necessary. Clerk's Papers (CP) at 97 (Jury Instruction 11). In addition, Kyllo's counsel proposed the

following "act on appearances" self-defense instruction; this instruction was given to the jury as jury instruction 13:

A person is entitled to act on appearances in defending himself, if that person believes in good faith and on reasonable grounds that he is in actual danger of great bodily harm, although it afterwards might develop that the person was mistaken as to the extent of the danger. Actual danger is not necessary for the use of force to be lawful.

CP at 79 (proposed instruction); CP at 99 (Jury Instruction 13). Counsel did not propose an instruction defining "great bodily harm" and none was given. However, in light of the fact that Kyllo was charged with second degree assault that would require the State to prove he inflicted "substantial bodily harm," *see* RCW 9A.36.021, an instruction was given defining "substantial bodily harm" as "bodily injury that involves a temporary but substantial disfigurement," or "temporary but substantial loss or impairment" of a bodily organ, or a "fracture" of a body part. CP at 105 (Jury Instruction 19). The trial court also gave an aggressor instruction. CP at 100 (Jury Instruction 14).

¶4 Counsel for both parties presented closing argument consistent with jury instruction 13, the "act on appearances" instruction. During the State's closing argument, the prosecuting attorney argued that Kyllo did not act in self-defense, saying, "The defendant had absolutely no reason to believe that he was going to be killed or severely, brutally attacked in this attack." III VRP (Oct. 25-27, 2004) at 373. During his closing argument, Kyllo's counsel argued, with regard to the amount of force Kyllo allegedly used in defending himself:

That was exactly the amount of force that he needed to use at that minute to save his life, to save himself either from death or grievous bodily harm. . . . He knew that Mickens was a violent man with a violent history, and he did what he needed to do to save himself from serious injury or death.

*Id.* at 385. Counsel also argued to the jury that if Kyllo "acted based on appearances and did only that which he

thought was necessary to protect himself from serious injury or death, you will return a verdict of not guilty based upon self-defense." *Id.* at 386.

¶5 The jury rejected the self-defense claim and found Kyllo guilty of second degree assault as charged. At sentencing, the State sought to have Kyllo sentenced as a persistent offender. The court concluded that the State had proved Kyllo was a persistent offender and imposed a sentence of life in prison without the possibility of early release.

¶6 Kyllo appealed. The Court of Appeals affirmed the conviction but reversed his sentence and remanded for resentencing. *State v. Kyllo*, noted at 141 Wn. App. 1037, 2007 WL 4111908, 2007 Wash. App. LEXIS 3101. We granted discretionary review but limited the issues on review. *State v. Kyllo*, 164 Wn.2d 1024 (2008).

## ANALYSIS

¶7 Kyllo argues that jury instruction 13, the "act on appearances" instruction, improperly lowered the State's burden of proof, thereby violating his right to due process. He maintains that counsel's representation was ineffective because his counsel proposed an instruction identical to instruction 13 and argued to the jury that Kyllo was entitled to the defense of self-defense only if he reasonably believed he was in danger of death or grievous bodily harm.

¶8 The first question is whether appellate review is precluded either under the invited error doctrine or because Kyllo did not object to instruction 13. The Court of Appeals held that Kyllo invited any error in giving instruction 13 because the defense proposed an identical instruction. *Kyllo*, 2007 WL 4111908, at *4, 2007 Wash. App. LEXIS 3101, at *11-12. We disagree. If instructional error is the result of ineffective assistance of counsel, the invited error doctrine does not preclude review. *State v. Aho*, 137 Wn.2d 736, 745, 975 P.2d 512 (1999); *State v. Rodriguez*, 121 Wn. App. 180, 183-84, 87 P.3d 1201 (2004).

¶9 The Court of Appeals also said that appellate review is precluded because Kyllo did not object to jury instruction 13. Again, we disagree. A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal. *State v. Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007). Additionally, because the State must disprove self-defense when properly raised, as part of its burden to prove beyond a reasonable doubt that the defendant committed the offense charged, a jury instruction on self-defense that misstates the law is an error of constitutional magnitude, *State v. Acosta*, 101 Wn.2d 612, 615-16, 683 P.2d 1069 (1984), *State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997), and *State v. LeFaber*, 128 Wn.2d 896, 900, 913 P.2d 369 (1996), and this error can be raised for the first time on appeal, *State v. L.B.*, 132 Wn. App. 948, 952, 135 P.3d 508 (2006). Accordingly, we turn to the merits of this claim.

¶10 To establish ineffective assistance of counsel, the defendant must establish that his attorney's performance was deficient and the deficiency prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996). Deficient performance is performance falling "below an objective standard of reasonableness based on consideration of all the circumstances." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Reasonable conduct for an attorney includes carrying out the duty to research the relevant law. *Strickland*, 466 U.S. at 690-91. The prejudice prong requires the defendant to prove that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *State v. Leavitt*, 111 Wn.2d 66, 72, 758 P.2d 982 (1988). If either element of the test is not satisfied, the inquiry ends. *Hendrickson*, 129 Wn.2d at 78.

¶11 There is a strong presumption that counsel's performance was reasonable. *State v. Studd*, 137 Wn.2d 533, 551, 973 P.2d 1049 (1999); *State v. Thomas*, 109 Wn.2d

222, 226, 743 P.2d 816 (1987). When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient. *Hendrickson*, 129 Wn.2d at 77-78; *McFarland*, 127 Wn.2d at 336.

¶12 The first question in deciding whether Kyllo was denied effective representation is whether jury instruction 13 misstated the law as Kyllo contends. Kyllo's claim of self-defense involves his use of nondeadly force against Mickens. RCW 9A.16.020(3) provides that a defendant's use of nondeadly force against another is justifiable when the defendant reasonably believes he is about to be injured and uses no more force than is necessary.

¶13 A jury instruction on self-defense that misstates the harm that the person must apprehend is erroneous. *See Walden*, 131 Wn.2d at 477-78. Because nondeadly force is at issue in this case, the jury should have been informed, as RCW 9A.16.020(3) provides, that a person is entitled to act in self-defense when he reasonably apprehends that he is about to be *injured*. One is not required to believe he is about to be grievously harmed or killed. Instruction 13 told the jury, however, that Kyllo was entitled to act in self-defense only if he believed in good faith and on reasonable grounds that he was "in actual danger of great bodily harm." CP at 99. The instruction incorrectly stated that Kyllo had to apprehend a greater degree of harm than is legally required before nondeadly force may be used in self-defense.

¶14 The State agrees that self-defense, in the context here, requires only a subjective, reasonable belief of imminent harm from the victim. *See LeFaber*, 128 Wn.2d at 899. The State maintains, however, that because the jurors were not given a definition of "great bodily harm," the instructions did not exclude ordinary batteries or prohibit the jury from considering Kyllo's subjective impressions of all the facts and circumstances.

¶15 We disagree. In relevant part the ordinary definition of "great" is "considerable or remarkable in magnitude . . . intensity, [or] degree." WEBSTER'S THIRD NEW INTERNATIONAL

DICTIONARY 994 (2002). Thus, the term "great bodily harm" in instruction 13 told the jury that to justify using force in self-defense, apprehension of a greater degree of harm was required than mere "injury."

¶16 Moreover, as mentioned, the jury was also instructed on "substantial bodily harm" in connection with the second degree assault charge against Kyllo that the State had to prove. While this instruction was not erroneous, under the circumstances here it may have contributed to jury misunderstanding of the kind of harm that Kyllo had to fear before he could act in self-defense. The terms "great bodily harm" and "substantial bodily harm" might have appeared similar enough to a juror to reinforce the impression given by instruction 13 that more than mere injury had to be apprehended. *See* CP at 105 (Jury Instruction 19, defining "substantial bodily harm" as "bodily injury that involves a temporary but substantial disfigurement," or "temporary but substantial loss or impairment" of a bodily organ, or a "fracture" of a body part).

¶17 Giving an "act on appearances" instruction based on the apprehension of "great bodily harm" is improper in a case involving use of nondeadly force and a defense of self-defense. Instead, the instruction should have described apprehension of *injury*. Instruction 13 was erroneous and lowered the State's burden of proof.

¶18 The State points out, however, that in jury instruction 11 the jury was correctly instructed that a person is entitled to act in self-defense when he reasonably believes he is about to be injured and when the force used is not more than necessary. While this is true, "[j]ury instructions on self-defense must more than adequately convey the law." *Walden*, 131 Wn.2d at 473. The jury instructions, read as a whole, "must make the relevant legal standard manifestly apparent to the average juror." *Id.*; *LeFaber*, 128 Wn.2d at 900. In *Walden*, as here, the jury was properly instructed in part. *Walden*, 131 Wn.2d at 475. But in addition, the jury was given an incorrect "act on appear-

ances" instruction defining the kind of injury that must be apprehended. *Id*. We concluded that reversal was required.

¶19 These requirements were not satisfied in this case. Instruction 13 misstated the kind of injury that Kyllo had to reasonably apprehend in order to be able to use self-defense. Further, because the jury was given only a definition of "substantial bodily harm," the jury could have been confused and could have believed that the definition was effectively equivalent to "great bodily harm," the term used in instruction 13. The jury instructions allowed the jury to apply an incorrect standard.

¶20 Next, we must determine whether proposing the erroneous instruction was deficient performance on counsel's part. At the time of trial, trial counsel's proposed "act on appearances" instruction was identical to the former 1994 pattern jury instructions, which used the term "great bodily harm." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 17.04 (2d ed. 1994) (WPIC).

¶21 As the Court of Appeals explained in a case decided subsequent to Kyllo's trial, prior to 1994, WPIC 17.04 referred to "injury" and not to "bodily harm" and provided that a person has the right to defend himself by the use of lawful force if the person, acting as a reasonably prudent person, mistakenly believes himself to be in danger of *injury*. *L.B.*, 132 Wn. App. at 952. In 1994, the Washington State Supreme Court Committee on Jury Instructions (Committee on Instructions) changed the WPIC to state the law on apprehension of danger as set out in *State v. Miller*, 141 Wash. 104, 250 P. 645 (1926), and its progeny. "In doing so, the Committee lifted language from the *Miller* opinion that referred to danger of great bodily harm (rather than danger of injury) and inserted it into WPIC 17.04." *L.B.*, 132 Wn. App. at 953. The Committee on Instructions thus replaced "injury" with "great bodily harm." But, as the court in *L.B.* correctly observed, in substituting the language from *Miller*, the Committee on Instructions departed from the law of self-defense stated in RCW 9A.16.020.

¶22 In *L.B.*, the Court of Appeals held that giving an "act on appearances" instruction based on the apprehension of "great bodily harm" is improper when the defendant raises a defense of self-defense for the use of nondeadly force. *L.B.*, 132 Wn. App. 948; *accord State v. Woods*, 138 Wn. App. 191, 156 P.3d 309 (2007).

¶23 Following the decisions in *L.B.* and *Woods*, WPIC 17.04 was amended, and "great bodily harm" was replaced by "injury" to reflect the law of self-defense established by the legislature. As the Committee on Instructions stated, "The requirement of 'great bodily harm' contained in the prior versions has been changed to 'injury.' Under RCW 9A.16.020, one can use self-defense to prevent any assault, regardless of whether the assault threatened great bodily harm." WPIC 17.04 cmt. (3d ed. 2008). The comment also advises that this WPIC applies to the use of nondeadly force, as opposed to deadly force. *Id.*

¶24 We have had prior occasion to consider whether counsel was ineffective when proposing a standard WPIC. In *Studd*, 137 Wn.2d at 551, we determined that counsel could not be faulted for requesting a then-unquestioned WPIC on self-defense that erroneously suggested justifiable homicide requires actual imminent harm, and concluded that counsel's performance was not deficient.

¶25 However, there is a significant difference between *Studd* and the present case. In *Studd*, at the time of trial, the case that made it clear that the instruction at issue was erroneous, *LeFaber*, had not yet been decided. In contrast, at the time of Kyllo's trial, there were several cases that should have indicated to counsel that the pattern instruction was flawed. First is *Walden*. In *Walden* we noted the confusion engendered by the challenged instruction's use of both the term " 'great bodily harm' " and the term " 'great bodily injury.' " *Walden*, 131 Wn.2d at 475 n.3. We said that the instruction there should have used the term " 'great personal injury' " rather than " 'great bodily harm' " when describing the type of harm that, if reasonably apprehended by the defendant, would justify use of deadly force in

self-defense. *Id.* In addition, the instruction in *Walden* stated that " '[g]reat bodily injury as used in this instruction means injury of a graver and more serious nature than an ordinary battery with a fist or pounding with the hand; it is an injury of such nature as to produce severe pain, suffering and injury.' " *Id.* at 472 (quoting instruction). This definition was erroneous because it apparently excluded injuries from assaults using hands and fists even if the defendant reasonably believed that great personal injury would result. *Id.* at 475-77.

¶26 Most importantly for present purposes, we concluded that because "great bodily harm" is an element of first degree assault with a specific definition in that context, this term should not be used in jury instructions on self-defense. *Id.* at 475 n.3.

¶27 In addition to *Walden*, two decisions by the Court of Appeals also suggested that former WPIC 17.04 (1994) was incorrect. *Rodriguez*, like *Walden*, involved the use of deadly force in self-defense. In accord with the analysis in *Walden*, the court held that it was error to give the same " 'act on appearances' " instruction given in Kyllo's case together with an instruction defining "great bodily harm." *Rodriguez*, 121 Wn. App. at 185-86. The court observed that the jury could easily have found that the defendant had to believe he was in actual danger of probable death, or serious bodily disfigurement, or loss of a body part or function (the definition of "great bodily harm"), rather than consider the defendant's subjective impressions of all the facts and circumstances and whether he reasonably believed the battery at issue would result in great personal injury—the level of harm that would justify use of deadly force. *Id.* at 186.

¶28 Finally, in *State v. Freeburg*, 105 Wn. App. 492, 503, 20 P.3d 984 (2001), also involving deadly force, the jury was correctly instructed that homicide is justifiable when committed in lawful defense when the slayer reasonably believed the person slain intended to inflict death or "great personal injury." However, in the "act on appearances" instruction, the

jury was instructed that a person is entitled to act on appearances in defending himself if he has reasonable grounds to believe he is in danger of "great bodily harm." *Id.* Both terms were defined in the jury instructions.

¶29 The Court of Appeals expressly noted the confusion caused by use of both terms and the fact that this court had said that "great bodily harm" should not be used because it is an element of first degree assault and is distinctly defined in that context. *Id.* at 504-05. The court also observed that the Committee on Instructions was aware of the problem with using "great bodily harm" because it stated in a comment that "great bodily harm" should not be used with the justifiable homicide statute in view of the first degree assault statute. *Id.* at 504 (quoting WPIC 2.04.01 cmt. at 22 (1994)). The court concluded the jury was erroneously instructed but found the error harmless under the facts.

¶30 Unlike *Studd*, here there was relevant case law at the time of trial that counsel should have discovered. Although these cases all deal with deadly force, they all indicate that "great bodily harm" should not be used in an "act on appearances" self-defense instruction. *Walden* was decided in 1997, *Freeburg* in March 2001, *Rodriguez* in April 2004, and Kyllo's trial occurred in late 2004. Further, *Walden* and *Rodriguez* would have told counsel that giving the instruction defining "substantial bodily harm" along with the "act on appearances" instruction that used "great bodily harm" was likely to misinform the jury about the law because "substantial bodily harm" is plainly not the correct standard.

¶31 With proper research, counsel should have determined from RCW 9A.16.020 and these cases that proposing an "act on appearances" instruction using "great bodily injury" was improper despite the term's appearance in former WPIC 17.04. Failing to research or apply relevant law was deficient performance here because it fell "below an objective standard of reasonableness based on consider-

ation of all the circumstances." *McFarland*, 127 Wn.2d at 334-35; *see Strickland*, 466 U.S. at 690-91.

¶32 We agree with *Kyllo* that counsel's conduct did not constitute legitimate trial strategy or tactics. In *Woods* the Court of Appeals was faced with an ineffectiveness claim based on proposing an instruction in accord with former WPIC 17.04. The court held that counsel's performance was deficient in light of *Walden*, *L.B.*, and *Freeburg*, notwithstanding the fact that the proposed instruction was a pattern jury instruction. The Court of Appeals said that "there was no strategic or tactical reason for counsel's proposal of an instruction that incorrectly stated the law [and] eased the State of its proper burden of proof on self-defense." *Woods*, 138 Wn. App. at 201-02.

¶33 Similarly, in *Rodriguez*, where an ineffectiveness claim was also raised, the court could not conceive of any reason why the defendant's lawyer would propose the defective instructions, since they decreased the State's burden to disprove self-defense. We agree. Counsel's performance here was deficient and was not the result of strategy or legitimate tactics.

¶34 The next question is whether the deficient performance prejudiced Kyllo. Self-defense was Kyllo's entire case. The record shows considerable conflicting evidence on who provoked the fight and what actually happened. If Mickens provoked the fight and if the jury believed, based on the instructions, that Kyllo had to apprehend anything greater than mere "injury" in order to act in self-defense based on his apprehension, whether mistaken or not, then this could easily have led the jury to conclude that he was not entitled to claim self-defense. Not only did the instructions tell the jury that something greater was required, both counsel at trial misstated the legal standard that applied, arguing that Kyllo needed to reasonably fear death or, at the least, "severe," "serious," or "grievous" bodily harm or injury before the right to self-defense could apply. Kyllo's own counsel argued too high a level of injury. As in *Walden*, reasonable jurors could read instruction 13 to

prohibit consideration of self-defense unless Kyllo feared greater injury than the law requires.

¶35 Moreover, although the jury was correctly instructed that a person is entitled to act in self-defense when he reasonably believes he is about to be injured and when the force used is not more than is necessary, CP at 97 (Jury Instruction 11), the jury could still be misled into misapplying the law regarding self-defense because counsel's proposed instruction (instruction 13) and instruction 19 (the "substantial bodily harm" definition) require an apprehension of greater harm than is required before Kyllo could act on a mistaken belief he was about to be injured. Just as occurred in *Walden*, the jury was correctly instructed on the general law of self-defense but then was given erroneous "act on appearances" instructions.

¶36 We conclude that there is a reasonable probability that but for counsel's deficient performance the outcome of the proceedings would have been different.

¶37 Kyllo also contends that his counsel was ineffective for repeatedly telling the jury during closing argument that Kyllo needed to be in fear of losing his life or suffering grievous harm, rather than mere injury, in order to act in self-defense.

¶38 The right to effective assistance of counsel extends to closing arguments. *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003). Counsel's argument incorrectly stated the law, as explained. One is entitled to use nondeadly force in self-defense without being in fear of death or grievous bodily harm. There was no tactical reason for making it more difficult for Kyllo to be acquitted on the basis of self-defense. And, as Kyllo contends, there was considerable evidence that would support the view that Kyllo was in fear of some injury but considerably less that he was in fear of death or grievous bodily harm. Counsel's deficient performance in closing argument exacerbated the problem posed by the erroneous "act on appearances" instruction.

¶39 Kyllo has established that his counsel was ineffective in proposing the "act on appearances" instruction without any definition letting the jury know that the defendant did not have to apprehend "great bodily harm" or "substantial bodily harm" but instead could lawfully act in self-defense if he reasonably feared "injury," and in misstating the law of self-defense during closing argument. Trial counsel's performance was deficient and Kyllo was thereby prejudiced. His conviction must be reversed and this cause remanded for a new trial.

¶40 Because we remand for retrial, we do not reach the second issue on which we granted discretionary review, an appearance of fairness question related to sentencing.[1]

## CONCLUSION

¶41 Mr. Kyllo was denied effective assistance of counsel. We reverse the Court of Appeals, reverse Kyllo's conviction, and remand for retrial.

ALEXANDER, C.J., and C. JOHNSON, SANDERS, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., concur.

---

[1] We do comment on one aspect of this issue, however. The Court of Appeals found a violation of the appearance of fairness doctrine and to remedy the error remanded for resentencing before a visiting judge. To avoid any possible confusion, we emphasize that it is unnecessary for Kyllo's new trial on remand to be heard by a visiting judge.