**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79639-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| THOMAS HAGERSTROM, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

MANN, C.J. — Thomas Hagerstrom appeals his conviction for second degree burglary, contending that the prosecutor committed misconduct by violating a pretrial order in limine. Alternatively, Hagerstrom alleges his counsel was ineffective for failing to object to the prosecutor's statements during closing arguments. We affirm.

I.

On June 29, 2018 just before 5:00 a.m., Miguel Lopez Heredia entered the secured parking garage at his apartment complex, Meydenbauer Luxury Apartments in Bellevue. Lopez was on his way to Bellevue Square Mall where he works as a security guard. When Lopez[1] entered the secured garage, he heard a noise and saw Hagerstrom with a bag, walking between cars and looking inside them. Nearby, Lopez

_____

[1] The court records indicate that the witness goes by Miguel Lopez.

Citations and pin cites are based on the Westlaw online version of the cited material.

noticed a truck with its interior lights on. Lopez observed Hagerstrom walk over to a maintenance storage cabinet and start going through the cabinet.

Lopez tried to introduce himself to Hagerstrom and asked if he was a new resident in the complex. Hagerstrom reacted in an aggressive manner and threatened to squeeze or split Lopez's skull. This reaction frightened Lopez and he opened the garage door and exit to the street to call 911.

Lopez watched Hagerstrom exit the garage on his bicycle and told the 911 operator where Hagerstrom was headed. Lopez watched Hagerstrom cross the street and enter property owned by the Meydenbauer Yacht Club. Bellevue police arrived and used a K9 to track Hagerstrom's location. The K9 tracked Hagerstrom to the yacht club. The officers found Hagerstrom's bicycle at the bottom of some stairs and Hagerstrom standing at the top.

Hagerstrom admitted being in the garage, and claimed he entered through an open door. The police did not find evidence of a forced entry or damage to the garage. Hagerstrom stated that his boss allowed him to be in the garage but would not say who his boss was. Hagerstrom denied taking anything from the garage and the police did not find any stolen property. Lopez identified Hagerstrom at the scene.

The State charged Hagerstrom with second degree burglary, alleging that he unlawfully entered and remained in the secure parking garage. Pretrial, the State moved to admit evidence of Hagerstrom's threat and his "flight" from the garage as movement as res gestae evidence of his intent to commit a crime within the building. Hagerstrom objected, arguing that the court should preclude the State from

characterizing Hagerstrom's movement as "flight from the scene." The court

responded:

> Okay, well, I will admit this. I do think that in arguing it, Mr. Bryan, it's probably improper for you to refer to it necessarily as flight. I think that what we do is lay the . . . circumstances out, the facts, and let the jury draw their owner conclusions as to what's going on.
>
> But I do think that the alleged threats made by Mr. [Hagerstrom] are definitely probative of what, if anything, he was doing there and whether it constitutes burglary or not. And I think that all of this – the what – the interaction between Mr. Lopez and Mr. [Hagerstrom] and Mr. [Hagerstrom's] actions after the – the confrontation are all part of the res – res gestae of the matter. I mean, it's all things that happened within a period of, what, a couple of hours and – and all – all things that – that are relevant for the jury to consider in terms of what's going on.
>
> The State requested clarification:
>
> [STATE]: Understood, Your Honor. Just so I – I'm clear, I – the State can get into the facts, lay out what the facts – give the testimony of the facts of what occurred, just not specifically arguing flight.
>
> COURT: Right.
>
> [STATE]: Okay.
>
> COURT: I mean, you – you just – you just have the officer explain, you know, what – what they did, and that had – they got a K9, and they found Mr. [Hagerstom] and … where they found him. And both – and, you know, you can – [the defense] can argue that – that, you know, Mr. [Hagerstom] was just going for a stroll along the – the yacht club.
>
> DEFENSE: Yes.
>
> COURT: And you can argue that he was – that he – that he was – had – had taken off. But, you know, I – but I – I don't think that it's – you would specifically label it as flight. But just that's what he did is –
>
> [STATE]: Yeah.
>
> [COURT]: -- that he – he headed off there.

In closing argument, the prosecutor described the sequence of events and then argued that the crux of the case was whether Hagerstrom intended to commit a crime in the garage. The prosecutor highlighted Hagerstrom's actions inside the garage that proved intent like checking inside cars and going through the cabinet. The prosecutor then highlighted Hagerstrom's aggression and threats to Lopez as further evidence of intent. The prosecutor then argued:

> Because then, once [Lopez] is fearful, he gets outside and disengages and calls 9-1-1, and Mr. Hagerstrom flees. He flees and goes across to the building until law enforcement arrive with the K9, Ghost, and they find him.

(Emphasis added).

Hagerstrom did not object.

In the defense closing, Hagerstrom argued that the State's case was based on "an assumption, a presumption, a preconceived idea." Hagerstrom argued that he had not ridden his bicycle far away, but merely had gone to the yacht club across the street.

> The prosecutor argued in rebuttal:

> He admits to being in [the parking garage]. He admits to going through an open door, admits to not living there. Then he threatens a resident – who actually does live there – with a death threat: I will split your skull. If you keep accusing [unintelligible], it will be the last thing you do.

> And then he flees the scene to the Meydenbauer Yacht Club to hide out until K9 arrives. That's the context. That's the facts before you.

(Emphasis added).

Hagerstrom did not object.

The jury found Hagerstrom guilty of second degree burglary.

II.

Hagerstrom contends he was deprived of a fair trial because the prosecutor committed misconduct by violating the trial court's order not to characterize Hagerstrom's movement as flight from the apartment complex.

A.

The Sixth Amendment to the United States Constitution and article 1, section 22 of the Washington State Constitution grants a defendant a fair trial but not an error-free trial. State v. Reed, 102 Wn.2d 140, 145, 684 P.2d 699 (1984). "To prevail on a claim of prosecutorial misconduct, the defendant must establish that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial." State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). Comments are prejudicial only where there is a substantial likelihood that the misconduct affected the jury's verdict. Thorgerson, 172 Wn.2d at 442-43. We look at the comments, not in isolation, but "in the context of the total argument, the issue in the case, the evidence addressed in the argument, and the instructions given to the jury." State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006).

If the defense shows that the prosecutor's comments were improper and prejudicial, but failed to object to an improper comment, then "the error is considered waived unless the comment is so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by a curative instruction to the jury." McKenzie, 157 Wn.2d at 52.

B.

There is no question here that the prosecutor's repeated use of the term "flee" directly contradicted the trial court's limiting instruction that it was improper to refer to Hagerstrom's actions as "flight." Repeated use of the term flee or flight was therefore improper. And because prosecutor relied on Hagerstrom's "flight" as evidence of his intent to commit a crime, it was arguably prejudicial.

Hagerstrom, however, did not object. Thus, we must determine if the use of "flight" was flagrant and ill-intentioned and caused enduring prejudice that could not be cured by a jury instruction. It did not.

While use of the term "flee" contradicted the trial court's admonition against using "flight," it was not ill-intentioned and did not cause enduring prejudice. The trial court agreed that the prosecutor could argue that Hagerstrom "took off." Consequently, as the State correctly argues, under the trial court's pretrial ruling, it would have been appropriate for the prosecutor to argue:

> Because then, once [Lopez] is fearful, he gets outside and disengages and calls 9-1-1, and Mr. Hagerstrom [took off]. He [took off] and goes across to the building until law enforcement arrive with the K9, Ghost, and they find him.

And:

> He admits to being in [the parking garage]. He admits to going through an open door, admits to not living there. Then he threatens a resident – who actually does live there – with a death threat: I will split your skull. If you keep accusing [unintelligible], it will be the last thing you do.
>
> And then he [took off from] the scene to the Meydenbauer Yacht Club to hide out until K9 arrives. That's the context. That's the facts before you.

The effect of the argument would have been the same.

Moreover, had Hagerstrom objected, any prejudice could have been cured by an instruction reminding the jury that the prosecutor's argument was not evidence, and to disregard the term "flee."

The prosecutor's argument, while in conflict with the pretrial ruling, was not flagrant, ill-intentioned, or so unduly prejudicial that it could not be cured by an instruction. McKenzie, 157 Wn.2d at 52.

III.

Hagerstrom argues alternatively that his trial counsel was constitutionally ineffective for failing to object to the prosecutor's use of the term "flee." We disagree.

We review ineffective assistance of counsel claims de novo. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). A defendant claiming ineffective assistance of counsel has the burden to establish that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant's case. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. McFarland, 127 Wn.2d 322, 334, 899 P.2d 1251 (1995). Failure to establish either prong is fatal to an ineffective assistance of counsel claim. Strickland, 466 U.S. at 700.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. State v. Stenson, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). Our scrutiny of counsel's performance is highly deferential; we strongly presume reasonableness. State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." State v. Kyllo, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). To establish prejudice, the defendant must show that but for counsel's performance, the

outcome would have been different.  State v. McLean, 178 Wn. App. 236, 248, 313 P.3d 1181 (2013).

Hagerstrom cannot meet the first burden to show that his counsel acted below an objective standard of reasonableness.  The record shows that counsel wanted to downplay Hagerstrom's departure from the parking garage.  Objecting to the prosecutor's use of the term "flee" and then allowing the prosecutor to re-state closing argument using "took off" would likely have increased, rather than decreased the impact on the jury.  Withholding the objection was a legitimate trial strategy.

Moreover, Hagerstrom cannot demonstrate prejudice.  As discussed above, even if an objection had been made, the prosecutor would have been able to restate the argument using the term "took off."  Hagerstrom fails to establish ineffective assistance of counsel based on his counsel's failure to object.

We affirm.

Mann, C.J.

WE CONCUR: