**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53030-9-II |
| Respondent, | |
| v. | |
| BEONKA PATRICE DOTY, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Beonka Doty appeals her conviction for criminal mistreatment in the second degree for withholding medical treatment from her daughter, LD. Doty argues that she received ineffective assistance of counsel because her attorney agreed to an erroneous jury instruction.[1] We agree with Doty and reverse.

FACTS

At some point on or after December 19, LD told Doty that she had pain in her buttocks. LD thought she knew the cause because she had previously suffered from the same condition a year before. By December 23, LD had extreme pain and could not eat. She had trouble walking,

---

[1] Doty also raises an evidentiary issue. Because we reverse, we do not address this issue.

sitting, or laying down. On that date, Doty took LD to the emergency room for treatment of a pilonidal abscess.[2]

Once at the hospital, LD stayed in the waiting room for approximately an hour while Doty parked, got food, had a Flu vaccine, and dropped her purse off at home. The hospital staff called LD but she could not be seen until Doty was present. When Doty returned, the staff saw LD. LD had a fever and an elevated white blood cell count, indicating an infection. LD told her nurse that the pain had started about a week prior, and the fever and mass from the abscess started that day.

The same night, an ambulance transferred LD to a pediatric hospital for surgery, under general anesthesia, to drain the abscess. Doty, concerned about her car and work, did not want to go to the other hospital. The surgery occurred December 24. LD's abscess was plum-sized and warm to the touch. When drained, it released 250 mL of pus. The surgeon indicated that the plum-sized abscess and amount of pus would have made it "very, very painful" to LD. 2 Report of Proceedings (RP) at 340. If left untreated, the abscess could have become life threatening, but it did not reach that level.

The State charged Doty with criminal mistreatment in the second degree. At trial, the court instructed the jury that to convict Doty of criminal mistreatment in the second degree, the State had to prove Doty recklessly (a) created an imminent and substantial risk of death or great bodily harm to LD by withholding any of the basic necessities of life; or (b) caused substantial bodily harm by withholding a basic necessity of life. Former RCW 9A.42.030 (2006).

---

[2] A pilonidal abscess occurs when a cavity in the cleft between buttocks gets infected with bacteria, usually deep into the tissue. These abscesses are very painful.

The court also instructed the jury that to return a verdict of guilty, the jury need not be unanimous as to which of alternatives (a) or (b) had been proved beyond a reasonable doubt, as long as each juror found that either (a) or (b) has been proved beyond a reasonable doubt.

Doty proposed an instruction that defined great bodily harm as "bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily part or organ." 3 RP at 585; 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 38.25, at 28 (4th ed. 2016) (WPIC); RCW 9A.42.010(2)(c).

Doty objected to the State's proposed instruction that defined great bodily harm as "bodily injury that creates a probability of death, or that causes significant serious permanent disfigurement, or that causes a significant permanent loss or impairment of the function of any bodily part or organ." 3 RP at 585; WPIC 2.04, at 710; RCW 9A.04.110(4)(c). Doty cited the commentary to the pattern instructions that stated the definition from WPIC 38.25 applied in cases of criminal mistreatment. The court pointed out that WPIC 38.25 included protracted loss or impairment but a high probability of death whereas WPIC 2.04 required significant permanent disfigurement or loss of function and a probability of death. Doty's defense attorney then agreed to the instruction given.[3]

The jury convicted Doty of criminal mistreatment in the second degree as charged. Doty appeals.

---

[3] The State misread the commentary to WPIC 38.25, which said "practitioners in criminal mistreatment cases should be careful to define great bodily harm using WPIC 38[.25] . . . rather than the more generally applicable WPIC 2.04." 3 RP at 586; WPIC 38.25 note on use at 710. The commentary has since been changed and clearly states that the criminal mistreatment specific definition of great bodily harm should be used.

ANALYSIS

Doty argues that she received ineffective assistance of counsel because her counsel agreed to an erroneous jury instruction that improperly defined great bodily harm "as 'bodily injury which creates a probability of death.'" Br. of Appellant at 14 (quoting RCW 9A.04.110(4)(c)). She contends that she was prejudiced by the instruction because it allowed the jury to convict if it found a risk of bodily injury that created a probability of death rather than a high probability of death.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011).

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on a claim of ineffective assistance of counsel, the defendant must show both that defense counsel's representation was deficient and that the deficient representation prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33. If either prong is not satisfied, the defendant's claim fails. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 673, 101 P.3d 1 (2004). "Deficient performance is performance falling 'below an objective standard of reasonableness based on consideration of all the circumstances.'" *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009) (quoting *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)).

When counsel's conduct can be characterized as legitimate strategy, performance is not deficient. *Kyllo*, 166 Wn.2d at 863. Generally, no legitimate strategic reason exists for allowing an instruction that incorrectly states the law and lowers the State's burden of proof. *Kyllo*, 166 Wn.2d at 869.

4

As applicable to the criminal mistreatment statutes, great bodily harm is defined as "bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily part or organ." RCW 9A.42.010(2)(c).

Generally, in other contexts, great bodily harm is defined as "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ." RCW 9A.04.110(4)(c).

RCW 9A.42.010(2)(c), the correct definition, requires proof of a high probability of death and not the mere probability of death. RCW 9A.42.010(2)(c) alternatively requires proof of an imminent and substantial risk of bodily injury which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily part or organ and not just one that causes a significant permanent loss or impairment.

Doty's lawyer initially proposed the correct instruction defining great bodily harm as it appeared in RCW 9A.42.010(2)(c). However, he ultimately agreed to use the incorrect definition contained in RCW 9A.04.110(4)(c). The lawyer provided deficient representation in this regard.

The record indicates that the decision was strategic because Doty's lawyer believed that the requirement that loss or impairment be permanent, rather than merely protracted, was helpful to his theory of the case and his client. However, by agreeing to the incorrect instruction, Doty's lawyer also allowed the State to have to prove only a probability of death, rather than a high probability of death. Although tactical, the decision was unreasonable.

The incorrect instruction was also prejudicial. One or more of the jurors could have voted to convict after finding that the State proved Doty created a risk of the probability of death. This standard is lower than proving a high probability of death. Doty received ineffective assistance of counsel. We reverse.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Lee, C.J.

Glasgow, J.