# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54942-5-II |
| Respondent, | |
| v. | |
| | UNPUBLISHED OPINION |
| TUCKER S. KAHLER, | |
| Appellant. | |

PRICE, J. — Tucker Kahler appeals from his conviction of rape of a child in the third degree. He argues that defense counsel was ineffective at trial for failing to provide evidence related to the visibility of the victim's birthday on Facebook. He also argues, and the State concedes, that the trial court erred by imposing a sentence in excess of the statutory maximum and by imposing a supervision fee. We disagree with Kahler's argument as to ineffective assistance of counsel. However, we agree that the supervision fee should be stricken and that Kahler's judgment and sentence should be remanded to the trial court to correct the sentencing error.

## FACTS

### I. BACKGROUND

Kahler and N.T. met at a Walmart while N.T. was shopping with her grandmother. Later that day, N.T., who was 14 years old at the time, snuck out of her grandparents' house in the middle of the night to Kahler's car that was parked across the street. Kahler was 26 years old at the time.

When N.T. got into Kahler's car, he handed her a White Claw. Kahler drove N.T. to a secluded place and sexual intercourse occurred.

Kahler was subsequently charged with rape in the second degree and rape of a child in the third degree.

## II. TRIAL

At trial, N.T. testified that Kahler had forced her to have sexual intercourse with him. She said that when she first met Kahler, she told him she was 14 years old. She admitted that according to the birthdate listed on her Facebook profile, she was 18, but she said that her privacy settings on Facebook were set so that only her friends and those with mutual friends with her could see this false birthdate.

Kahler testified and admitted to having sex with N.T. However, he maintained that it was consensual and that he had reasonably believed N.T. was at least age 16. These were defenses to the crimes of rape in the second degree and rape of a child in the third degree respectively. Kahler testified that N.T. had told him she was 18 when they first met. He also testified that although he did not have a Facebook account, he had looked up N.T.'s Facebook page prior to the alleged rape and the birthdate provided on her page was publicly viewable and indicated that she was 18.

In rebuttal, the State presented the testimony of Detective Dave Arand of the Port Angeles Police Department who showed a screenshot of N.T.'s Facebook profile taken that morning indicating that her birthdate was not visible to users who did not have mutual friends with N.T.

During cross-examination of Detective Arand, defense counsel asked that the jury be excused from the courtroom for an offer of proof. With the jury absent, defense counsel explained that he had viewed N.T.'s profile on Facebook using his own account and N.T.'s birthdate was

visible even though he was neither friends with N.T. nor had mutual friends with her. Defense counsel wanted to explore whether he could somehow bring in the evidence from his own Facebook page.

Continuing with his offer of proof, defense counsel then handed his phone to Detective Arand, who confirmed that defense counsel was not friends with N.T. Detective Arand looked up N.T.'s profile and confirmed that he could see her birthdate on defense counsel's phone. Although Detective Arand did not confirm that defense counsel did not have mutual friends with N.T., defense counsel stated twice that he did not.

The parties and the trial court then engaged in a discussion regarding whether and how defense counsel could bring in evidence from his own Facebook account. Defense counsel appeared to have decided that, instead of actually presenting his own Facebook account, he was going to ask Detective Arand whether he had been able to see N.T.'s birthdate on her profile from any other accounts. At this point in the discussion, Kahler interrupted and asked to speak with defense counsel privately.

After this private discussion with Kahler, defense counsel came back and informed the trial court that he felt like there were several potential issues with bringing in evidence from his own Facebook page. Defense counsel also expressed doubts about the evidence, saying:

> I think that makes more sense, because I just don't, the more I thought about it, I just don't feel comfortable with this because something is just—I just looked, I don't see that we have any mutual friends in common, but something had to have happened to where I could see it and Detective Arand can't.

2 Verbatim Report of Proceedings (VRP) at 543. After this conversation, the jury returned to the courtroom, and defense counsel continued cross-examining Detective Arand. Detective Arand confirmed that the screenshot he had presented was downloaded that morning and did not show

what might be viewable when Kahler claimed to have seen the page. Notably, defense counsel asked no questions about defense counsel's own Facebook page that had been previously discussed during the offer of proof.

The jury found Kahler not guilty of rape in the second degree with forcible compulsion but guilty of rape of a child in the third degree.[1]

### III. SENTENCING

The statutory maximum penalty for Kahler was 60 months and the standard range was 36-48 months. The trial court sentenced Kahler to 48 months in prison followed by 36 months of community custody.

The trial court also found Kahler to be indigent and stated that it would not be imposing any financial obligations apart from the victim assessment penalty. However, the judgment and sentence included a provision requiring Kahler to pay supervision fees.

Kahler appeals his conviction and sentence.

### ANALYSIS

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

A. LEGAL PRINCIPLES

The Sixth Amendment to the U.S. Constitution and article I, section 22 of the Washington Constitution guarantee a defendant the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). Prevailing on an ineffective assistance of counsel claim

---

[1] The trial court's instructions to the jury included the defense's proposed instruction on the affirmative defense of mistake of age.

requires the defendant to show: (1) deficient performance and (2) prejudice to the defendant. *Id.* at 32-33.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id.* at 33. We engage in a strong presumption that counsel's performance was reasonable. *Id.* " 'When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient.' " *Id.* (quoting *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009)). A defendant may overcome this presumption by showing no " 'conceivable legitimate tactic explaining counsel's performance.' " *Id.* (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

"The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland v. Washington*, 466 U.S. 668, 691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In making a determination regarding an ineffective assistance of counsel claim, we may also consider actions and statements of the defendant which may have "given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful." *See Id.*

The prejudice prong requires the defendant to show "a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Grier*, 171 Wn.2d at 34 (quoting *Strickland*, 466 U.S. at 694).

B. APPLICATION

Kahler maintains that defense counsel was ineffective for failing to present evidence from defense counsel's own Facebook page that could have corroborated Kahler's testimony that N.T.'s Facebook profile said she was 18. We disagree.

It appears from the record that defense counsel's decision not to present the evidence or ask Detective Arand about it on cross-examination can be characterized as a legitimate trial strategy. Initially, defense counsel appeared to be uncertain about whether, and how, to bring in the evidence. Then, as he was openly considering using the evidence to cross-examine Detective Arand, Kahler interrupted the conversation and asked if he could speak with defense counsel privately. After this private attorney-client conversation, defense counsel immediately informed the trial court he was *not* going to attempt to introduce his own Facebook page. It is logical to infer that defense counsel's decision not to bring in this evidence immediately following his private consultation with Kahler was "determined or substantially influenced" by this discussion– supporting the inference that this was a jointly-discussed strategy, not deficient performance. *See Strickland*, 466 U.S. at 691. Because defense counsel's decision appears to be a legitimate trial strategy resulting from a conversation with Kahler, he was not deficient for failing to present the evidence related to his Facebook page.

Even if defense counsel was deficient for not introducing his own Facebook page into evidence, Kahler has failed to show prejudice. First, the probative value of the evidence was low because it would have only shown that N.T.'s birthdate was publicly viewable at the time of the trial. Because Facebook privacy settings are changeable, the evidence would not have established what was viewable when Kahler claimed to have looked at the profile about a year prior. Second,

there were other sources of information from which the jury could evaluate the reasonableness of Kahler's purported belief that N.T. was eighteen, especially since N.T. testified in the courtroom where the jury was able to directly observe her. Third, defense counsel appropriately minimized the importance of the State's Facebook exhibit by soliciting and emphasizing testimony that it did not establish what was publicly viewable at the time of the incident. For these reasons, Kahler has failed to establish that he was prejudiced by defense counsel's failure to present the evidence.

## II. SENTENCE

Kahler argues that the trial court erred in imposing a sentence beyond the statutory maximum. The State concedes the error. We agree.

Where a defendant's sentence includes community custody along with time in prison, the combined time of both may not exceed the statutory maximum sentence. RCW 9.94A.505(5). Where the trial court erroneously imposes a sentence in excess of the statutory maximum, we remand for the trial court to amend the community custody term. *State v. Boyd*, 174 Wn.2d 470, 473, 275 P.3d 321 (2012).

The trial court sentenced Kahler to 48 months in prison and 36 months of community custody for a total of 84 months. The statutory maximum was 60 months. Because Kahler's sentence was in excess of the statutory maximum, we remand for the trial court to reduce the community custody term consistent with the statutory maximum.

## III. SUPERVISION FEES

Kahler argues that the trial court inadvertently imposed supervision fees as part of the judgment and sentence. The record shows that the State did not orally request the supervision fees and the trial court did not intend to impose them at sentencing. The trial court found Kahler

7

indigent and said that the only financial obligation that would be imposed was the victim assessment fee. The State concedes that the judgment and sentence should be corrected to remove the supervision fees.

Because it is evident from the record that the trial court did not intend to impose the supervision fees, we find that the inadvertent imposition of the supervision fees was a procedural error and order it stricken from the judgment and sentence. *See State v. Bowman*, 198 Wn.2d 609, 627-30, 498 P.3d 478 (2021).

CONCLUSION

In conclusion, we affirm Kahler's conviction, and remand for the trial to reduce the community custody term and order the supervision fees be stricken from the judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

GLASGOW, A.C.J.

WORSWICK, J.