IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 83464-9-I |
| Respondent, | |
| v. | DIVISION ONE |
| BYRON RENEE TAYLOR, JR., | UNPUBLISHED OPINION |
| Appellant. | |

CHUN, J. — A jury found Byron Taylor guilty of child molestation in the third degree. On appeal, Taylor contends that (1) the prosecutor committed prejudicial misconduct, (2) defense counsel provided ineffective assistance of counsel (IAC) by not objecting to such misconduct, and (3) the trial court inadvertently imposed discretionary supervision fees. For the reasons below, we remand for the trial court to strike the supervision fees and affirm in all other respects.

I. BACKGROUND

Taylor lived with his girlfriend and her two minor daughters, C.K. and A.K., for four years. C.K. reported that Taylor touched her inappropriately, and the State charged him with child molestation in the third degree.

During trial, C.K. testified that Taylor touched her inappropriately by taking her clothes off, touching her vagina and buttocks while she slept, and touching her breasts and buttocks while they wrestled. She also said that Taylor rubbed and put his finger inside her vagina. She said that he "dry hump[ed]" her and she

Citations and pin cites are based on the Westlaw online version of the cited material.

"felt his male part get hard, I think." When asked whether she thought Taylor's sexual desire motivated him to touch her, C.K. said, "Yes." She said she thought the touching was "sexually motivated" because Taylor would tell A.K. to leave the room and then "he would touch me." A.K. testified that she saw Taylor touch and rub C.K.'s "butt and her private part" more than once.

Taylor testified to the following: He would take C.K.'s and A.K.'s clothes off while they were sleeping because they complained they were hot. Taylor said he play wrestled with C.K. and A.K. "[a]ll the time." While they were wrestling, he would touch or pinch C.K.'s breasts because he knew they were developing and sore, and it was a way to "keep her away" or "get her off me" because "[i]t's hard to get a kid out of play mode." He also said that he once touched C.K.'s vagina to inspect a rash and that made him uncomfortable. Taylor denied he touched C.K. or A.K. for enjoyment or sexual pleasure.

Consistent with WPIC 1.02,[1] the trial court instructed the jury as follows:

> The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits. The law is contained in my instructions to you. You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.

And consistent with WPIC 4.01,[2] it instructed the jury on presumption of

---

[1] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 1.02 (5th ed. 2021).

[2] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01 (5th ed. 2021).

innocence and the beyond the reasonable doubt standard:

> The Defendant has entered a plea of not guilty. That plea puts in issue every element of the crime charged. The State is the plaintiff and has the burden of proving each element of the crime beyond a reasonable doubt. The Defendant has no burden of proving that a reasonable doubt exists.
>
> A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.
>
> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

During closing argument, the prosecutor referred to the reasonable doubt standard in the instruction and said that the "abiding belief" has to be tested and Taylor tested it by testifying. The prosecutor said,

> Probably the one concern you're going to have is what does it mean to have an abiding belief? Now, if you listen to the instructions, the judge has told you that if you an [sic] abiding belief in the truth of the charge I have proven to you beyond a reasonable doubt that he's guilty.
>
> Now, what does that mean? It's almost as slippery as beyond a reasonable doubt. Well, this process was designed to test your belief. We give opening statements and you're told that that is not evidence. And it isn't, but it gives you an idea of what the arguments will be, what the evidence will be, then the State presents its case. And maybe you believe at that point, but it's not an abiding belief. It hasn't been tested. Does the defendant - defense gets to cross-examine those witnesses. It tests your belief in the truth that they are telling you. After all of that, the defendant chose to testify in an effort to challenge your belief that he's guilty. And then there's closing arguments, which are not evidence either, but they're supposed to guide you in how you bel - what you believe and whether this case is true.

3

In explaining "abiding belief" and the "beyond a reasonable doubt standard," the prosecutor said,

> Your belief in his guilt has survived the entire process that we have put before you today and that's an abiding belief. At the end you still believe that he's guilty is an abiding belief and I - I have proved to you beyond a reasonable doubt that he's guilty of this charge.

Taylor's counsel did not object to the prosecutor's statements.

The jury found Taylor guilty of child molestation in the third degree. At sentencing, the trial court imposed a 15-month sentence. It found that Taylor "hasn't demonstrated a sufficient income to impose any discretionary fines" and said it would impose only "mandatory legal financial obligations." But in a lengthy paragraph on community custody conditions, the judgment and sentence obligates Taylor to "pay supervision fees as determined by DOC [(Department of Corrections)]" along with the mandatory victim assessment fee.

Taylor appeals.

## II.    ANALYSIS

### A. Prosecutorial Misconduct

Taylor says the prosecutor committed prejudicial misconduct during closing argument by misstating the reasonable doubt standard and undermining the presumption of innocence. While we agree that certain statements were improper, we disagree that the prosecutor committed prejudicial misconduct requiring reversal.

We review allegations of prosecutorial misconduct for an abuse of discretion. State v. Lindsay, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). To

4

prevail on a claim of prosecutorial misconduct, the defendant bears the burden of "show[ing] that in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial."  In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 704, 286 P.3d 673 (2012).  Once a defendant establishes that a prosecutor's statements were improper, if, as here, the defendant did not object at trial, "the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice."  State v. Emery, 174 Wn.2d 741, 760–61, 278 P.3d 653 (2012).  Defense counsel's failure to object to the prosecutor's allegedly improper comments "'strongly suggests'" that the comments "'did not appear critically prejudicial to [the defendant] in the context of the trial.'"  State v. McKenzie, 157 Wn.2d 44, 53 n.2, 134 P.3d 221 (2006) (emphasis omitted) (quoting State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990)).

Taylor says, and the State concedes, that some of the prosecutor's statements were improper.  "Due process requires that the State bear the burden of proving every element of the crime beyond a reasonable doubt."  State v. Warren, 165 Wn.2d 17, 26, 195 P.3d 940 (2008).  "[T]he defendant is entitled to the benefit of any reasonable doubt.  It is error for the State to suggest otherwise."  Id. at 27.  "Arguments by the prosecution that shift or misstate the State's burden to prove the defendant's guilt beyond a reasonable doubt constitute misconduct."  Lindsay, 180 Wn.2d at 434.  The prosecutor's comments that "this process was designed to test your belief" and that "the defendant chose

to testify in an effort to challenge your belief that he's guilty," were misstatements of the burden of proof and tended to undermine his presumption of innocence. The prosecutor's statements suggested that the jury starts by presuming Taylor is guilty. The prosecutor similarly suggested that the jury starts with a presumption of guilt rather than innocence by saying,

> Your belief in his guilt has survived the entire process that we have put before you today and that's an abiding belief. At the end you still believe that he's guilty is an abiding belief and I–I have proved to you beyond a reasonable doubt that he's guilty of this charge.

As mentioned above, we next consider whether the prosecutor's misconduct was so flagrant and ill-intentioned that no jury instruction could have cured the resulting prejudice. Emery, 174 Wn.2d at 760–61. We analyze prejudice by looking at the comments "in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury." Warren, 165 Wn.2d at 28 (trial court's timely instruction cured any error). And "[w]e presume the jury was able to follow the court's instruction." Id.

In Warren, during closing argument, the prosecutor improperly repeated that "[r]easonable doubt does not mean give the defendant the benefit of the doubt." Id. at 24–25. The defense objected and the trial court provided a curative instruction, referring the jury to the written instructions and explaining the State's burden of proof. Id. at 24–26. Our Supreme Court determined that because the trial court gave "a correct and thorough curative instruction, . . . any error was cured." Id. at 28; see also State v. Thorgerson, 172 Wn.2d 438, 452,

6

258 P.3d 43 (2011) (concluding that "a curative instruction would have alleviated any prejudicial effect").

Unlike in Warren, Taylor's counsel did not object and the trial court did not provide a curative jury instruction. But Taylor has not shown that the prosecutor's statements were so flagrant and ill-intentioned that a curative instruction could not have alleviated any prejudice.

Additionally, consistent with WPIC 4.01, the trial court instructed the jury with the correct statement of the burden of proof and presumption of innocence. And consistent with WPIC 1.02, it instructed the jury that "[t]he law is contained in my instructions to you. You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions." We presume the jury followed the instructions. Warren, 165 Wn.2d at 28. Given these instructions, a curative instruction would have sufficed to overcome any resulting prejudice from the prosecutor's comments.[3]

Moreover, given the significant evidence against Taylor, he fails to show that the prosecutor's comments prejudiced the outcome. In State v. Emery, Division Two determined that, despite the prosecutor's improper statements, the defendant could not show prejudice because the State presented multiple

---

[3] See, e.g., State v. Anderson, 153 Wn. App. 417, 432, 220 P.3d 1273 (2009) ("The trial court's instructions regarding the presumption of innocence minimized any negative impact on the jury. Again, we presume the jury follows the trial court's instructions."); In re Pers. Restraint of Jackson, No. 46411-0-II, slip op. at 11 (Wash. Ct. App. Mar. 8, 2016) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2046411-0-II%20Unpublished%20Opinion.pdf ("Since the jury was instructed on WPIC 1.02 and WPIC 4.01, then certainly a specially tailored instruction, if requested, would have remedied any impropriety."); see also GR 14.1(c) ("Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions.").

witnesses and evidence against the defendant. 161 Wn. App. 172, 195–96, 253 P.3d 413 (2011), aff'd 174 Wn.2d 741 (2012). Likewise, in State v. Anderson, despite the prosecutor's argument subverting the presumption of innocence, the defendant could not show prejudice because the jury instructions outlined the jury's duties and there was a thorough discussion of the evidence against the defendant. 153 Wn. App. 417, 429, 220 P.3d 1273 (2009). That evidence, like in Emery and in this case, included the testimony of multiple witnesses. Id. at 426; Emery, 161 Wn. App. at 196.

Here, significant evidence, including C.K.'s and A.K.'s testimony established that Taylor committed the crime of child molestation in the third degree.[4] C.K. testified that Taylor would touch "[m]y vagina and my butt," rubbed and put his finger inside her vagina, and "dry-hump[ed]" her. She also testified that she thought Taylor's touching was sexually motivated because, before touching her, he told A.K. to leave the room. A.K. testified that she saw Taylor touch and rub C.K.'s "butt and her private part." And Taylor testified that he took C.K. and A.K.'s clothes off while they were sleeping because they were hot, touched or pinched C.K.'s breasts while they wrestled, and once touched C.K.'s vagina to inspect a rash. Given this evidence of Taylor's guilt, it is unlikely that the prosecutor's comment affected the verdict.

---

[4] "A person is guilty of child molestation in the third degree when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is at least fourteen years old but less than sixteen years old and the perpetrator is at least forty-eight months older than the victim." RCW 9A.44.089(1).

While the prosecutor made improper comments, Taylor has not established prejudice warranting reversal.

B.  IAC

Taylor says his trial counsel was ineffective for failing to object to the prosecutor's statements during closing argument, which warrants reversal.  We disagree.

We review de novo a claim of IAC, which is a mixed question of law and fact.  State v. Jones, 183 Wn.2d 327, 338, 352 P.3d 776 (2015).  To prevail on a claim of IAC, Taylor must show that (1) his counsel's performance was deficient and (2) that deficient performance prejudiced him.  Id. at 339.  We need not address both prongs of the analysis if the defendant's showing on one prong is insufficient.  State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

We begin with "'a strong presumption that counsel's performance was reasonable.'"  State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting Kyllo, 166 Wn.2d at 862).  The defendant bears the burden of establishing deficient performance—that the performance fell below an objective standard of reasonableness—and that the performance was not for a strategic or practical reason.  Id. at 33–34; State v. Horton, 116 Wn. App. 909, 912, 68 P.3d 1145 (2003).  "Lawyers do not commonly object during closing argument 'absent egregious misstatements.'  A decision not to object during summation is within the wide range of permissible professional legal conduct."  In re Pers. Restraint of Davis, 152 Wn.2d 647, 717, 101 P.3d 1 (2004) (footnote omitted) (quoting United States v. Necoechea, 986 F.2d 1273, 1281 (9th Cir. 1993), and citing

9

Strickland v. Washington, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).  Prejudice requires Taylor to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.

Taylor says that, given the case law on prosecutors' mischaracterization of the reasonable doubt standard, no reasonable attorney would fail to object to such statements.  He also says that counsel's failure to object was prejudicial because the prosecutor undermined the presumption of innocence and "the jury was instead left with the improper impression that an abiding belief meant that it should presume Mr. Taylor guilty unless its ongoing belief was adequately challenged by Mr. Taylor at trial."

Assuming without deciding that counsel's failure to object and request a curative instruction was deficient, Taylor has not shown prejudice.  The trial court properly instructed the jury on the State's burden of proof.  See Warren, 165 Wn.2d at 28.  And, as discussed above, the State presented significant evidence that Taylor molested C.K.  Thus, counsel's failure to object and request a curative instruction did not prejudice the outcome.  Because failure to establish either prong defeats an IAC claim, we conclude that Taylor's claim fails.

C. Supervision Fees

Taylor says, and the State concedes, the trial court inadvertently imposed discretionary DOC community custody supervision fees when it stated that it intended to impose only mandatory legal financial obligations (LFOs).  We remand for the trial court to strike the supervision fees.

10

Because trial courts can waive supervision fees, they are discretionary LFOs. State v. Bowman, 198 Wn.2d 609, 629, 498 P.3d 478 (2021) (citing State v. Dillon, 12 Wn. App. 2d 133, 152, 456 P.3d 1199, review denied, 195 Wn.2d 1022, 464 P.3d 198 (2020)); RCW 9.94A.703(2). "Where the record demonstrates that the trial court intended to impose only mandatory LFOs but inadvertently imposed supervision fees, it is appropriate for us to strike the condition of community custody requiring these fees." State v. Peña Salvador, 17 Wn. App. 2d 769, 791–92, 487 P.3d 923, review denied, 198 Wn.2d 1016, 495 P.3d 844 (2021).

In Dillon, we concluded that it appeared the trial court inadvertently imposed supervision fees because the trial court stated that it would "order $500 victim penalty assessment, which is still truly mandatory, as well as restitution, if any." 12 Wn. App. 2d at 152. The trial court said nothing about supervision fees. Id. We also concluded that the trial court inadvertently imposed the supervision fees because of their location in the prewritten language of the judgment and sentence. Id. Recently, in Bowman, our Supreme Court said, "In accord with Dillon, we agree that the trial court committed procedural error by imposing a discretionary fee where it had otherwise agreed to waive such fees." 198 Wn.2d at 629. And it ordered the fee be stricken from the judgment and sentence. Id.

Here, the trial court stated, "Only the mandatory legal financial obligations will be imposed." It said nothing about supervision fees. But it used a judgment and sentence with prewritten language. In a lengthy paragraph under the community custody section, the judgment and sentence said, "While on

11

community custody, the Defendant shall . . . pay supervision fees as determined by DOC." As in Dillon and Bowman, it appears the trial court inadvertently imposed the supervision fees by using a form judgment and sentence with prewritten language. Thus, the State's concession is well taken, and we remand for the trial court to strike the supervision fees.

We remand for the trial court to strike the supervision fees and otherwise affirm.

Chun, J.

WE CONCUR:

Andrus, A.C.J.