IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

GABRIEL ANTHONY WILLIAMSON,

Appellant.

No. 88026-8-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — Gabriel Williamson appeals his jury conviction for assault in the second degree. Williamson contends the trial court incorrectly instructed the jury on self-defense, and that the prosecutor improperly elicited opinion testimony as to his guilt. Additionally, Williamson contends that defense counsel was ineffective for not objecting as to both. We affirm.

FACTS

On October 21, 2023, security cameras recorded an altercation, without audio, between Williamson and Charley Parker at the Aberdeen bus mall in Grays Harbor County, Washington. The video footage shows Williamson sitting in the first row of benches and Parker sitting in the third row. Williamson is seen turning to face Parker and walking up to him. As Williamson approaches Parker, Parker's right hand moves back toward his right pants pocket. Then, Williamson is seen hitting Parker on the right side of his head, knocking off his sunglasses. Parker then stands up and Williamson

takes one step backwards. While stepping back, Williamson is seen pointing his left hand at Parker's face, Parker flinches, and Williamson pulls out a knife. Williamson walks closer to Parker, and Parker sits back down on the bench while reaching for his sunglasses to his left. Parker places his right arm across his body in between himself and Williamson such that his right hand is visible and does not appear to be holding anything. Then Williamson shoves Parker's head backwards and tries to put the knife to Parker's head, but, at first, Parker pushes Williamson's arm holding the knife away from him. Williamson proceeds to press against Parker, shoving him further into the bench while standing overtop with the knife to Parker's head. Williamson then holds the knife to Parker's face and Parker grabs Williamson's hand holding the knife. The two struggle with Williamson on top of Parker, and in the process, Parker's hand appears to have been cut with the knife. After a few more seconds, Williamson stops pressing against Parker and backs away. Parker remains at the bus station, pacing and examining his right hand as Williamson leaves.

A transit worker witnessed the altercation from inside a building through the window. When the worker observed Williamson and Parker standing and facing each other, the worker, who did not know the names of the parties and identified them by their physical appearances at trial, called 911. The worker said that Parker had a knife in a leather holder that was attached to the belt of his jeans on his right side, but never saw the knife come out of the holder. The worker conceded that her vantage point was similar to that of the security camera that recorded the incident and that she could not see what he was doing on his right side. The worker testified that Williamson "pulled out like a swiss army knife, pocket knife, and then held it against the other guy's head." The

knife impacted Parker's hand and left blood splattered on the ground and on the bench.

The Aberdeen Police Department dispatched several officers to the scene. One officer witnessed Parker still at the bus mall holding his hand with what appeared to be "a bandage or a piece of – article on it." The officer observed that Parker had a fixed blade knife in a leather sheath. Parker told the officer that he "had received a cut or a laceration on his hand." The officer called for an ambulance that transported Parker to the community hospital. Other officers located and detained Williamson about two blocks west of the bus mall. They found a folding knife on his person. An investigating officer contacted Parker while he was at the hospital and took photographs of what he described as a "large laceration" on Parker's thumb. The pictures, later admitted at trial, documented Parker receiving stiches on his hand.[1] Soon after, the State charged Williamson with assault in the second degree, alleging that Williamson assaulted Parker with a knife.

At trial, Williamson testified that, on the date of the altercation, Parker did not say anything to him but that previously, on several occasions, Parker was eavesdropping on conversations while Williamson was talking to others.[2] Williamson stated that when he first saw Parker, Williamson told him "not to even bother looking my way." Then, according to Williamson, "[Parker] aggressively said, what, like everybody knows what that means. So that's when I jumped up and told [Parker] exactly what I was talking about. That's when [Parker] went like this, went for his knife. I realized he had a knife; that's when I pulled mine out". Williamson then clarified that Parker never pulled out his knife and that Williamson saw Parker's hand go for a "sheath" about mid-thigh and that

---

[1] Williamson did not designate the photographs for transmittal to this court.
[2] Williamson also testified that he did not know Parker.

is when Williamson pulled out his knife. Parker did not testify at trial.

Earlier during trial, the State on direct examination questioned responding Auburn Police Sergeant Jason Capps about the video. Specifically, the State, without objection, asked, "are part of your duties to determine who may be the aggressor and who may not be?" Sergeant Capps stated, "[t]hat is correct." The State then asked, "[a]nd based on your review of the footage, were you able to determine that you had a suspect or not?" Sergeant Capps stated, "[y]es, I did." The State asked who that was and Sergeant Capps responded, "Mr. Williamson." Later, the State, on direct examination of a patrol officer, asked, "[b]ased on your review of this footage, is there any question in your mind who is the aggressor here?" Defense counsel objected and the court sustained the objection.

Finally, before closing arguments, the court asked for the parties' position on whether a jury instruction should be given on self-defense. The State explained it anticipated self-defense was going to be an issue but argued that the trial court needed to determine whether Williamson's testimony that Parker was reaching for a knife was sufficient for a self-defense instruction. The court stated that the self-defense issue is "tricky, because the video speaks for itself." Still, the court determined that it was "inclined to give the instruction on self-defense out of an abundance of caution."

Defense counsel proposed a self-defense jury instruction modeled after 11 Washington Practice: Washington Pattern Jury Instructions: Criminal 17.02 (5th ed. 2024) (WPIC) that read:

> It is a defense to a charge of Assault that the force used was lawful as defined in this instruction. The use of force upon or toward the person of another is lawful when used by a person who reasonably believes that he is about to be injured in preventing or attempting to prevent an offense

4

against the person, and when the force is not more than is necessary. The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of and prior to the incident.

The State has the burden of proving beyond a reasonable doubt that the force used by the defendant was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

(Emphasis added.) The State proposed an instruction that it identified to the court as

WPIC 16.02. WPIC 16.02 is an instruction on justifiable homicide and is based on RCW

9A.16.050(1).[3] However, the language of the State's instruction did not follow most of

the language of WPIC 16.02. Nor did it follow the language of WPIC 17.02. The State's

proposed instruction read as follows:

> It is a defense to a charge of Assault in the Second Degree that the assault was justifiable as defined in this instruction.

---

[3] WPIC 16.02 (2024) states:
It is a defense to a charge of [murder] [manslaughter] that the homicide was justifiable as defined in this instruction.

Homicide is justifiable when committed in the lawful defense of [the slayer] [the slayer's [husband] [wife] [registered domestic partner] [parent] [child] [brother] [sister]] [any person in the slayer's presence or company] when:

(1) the slayer reasonably believed that the person slain [or others whom the defendant reasonably believed were acting in concert with the person slain] intended [to commit a felony] [to inflict death or great personal injury];

(2) the slayer reasonably believed that there was imminent danger of such harm being accomplished; and

(3) the slayer employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to [him] [her], at the time of [and prior to] the incident.

The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

5

The use of force is justifiable when committed in the lawful defense of the defendant when:

(1) reasonably believed that <u>the person whom force was used against intended to inflict death or great personal injury;</u>

(2) defendant reasonably believed that there was imminent danger of such harm being accomplished; and

(3) the defendant employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the defendant, taking into consideration all the facts and circumstances as they appeared to him, at the time of and prior to the incident.

The State has the burden of proving beyond a reasonable doubt that the force used was not justifiable. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

(Emphasis added.)

During discussions about the jury instructions, the State explained it had not included a self-defense instruction in the initial set of proposed instructions to the court. Rather, the State expressed that it recently emailed the court and parties a first amended set of instructions that included a self-defense instruction. These instructions were viewed for the first time by the prosecutor in court as the court reviewed them. Neither the parties nor the court made any reference to WPIC 16.02 or 17.02. The court, in reviewing the proposed defense instructions, noted that defense counsel "has the same" "primary self-defense instruction." The court observed that defense also offered WPIC 17.04, which instructed the jury that a person is entitled to act on appearances in defending oneself. The court went so far as to look up the language of WPIC 17.04 to make sure the verbiage on the proposed instruction was correct. Without objection from the State, the court stated that the two self-defense instructions proposed

6

by the defense were correct re-statements of the WPICs and that the court intended to include them in the court's instructions to the jury. However, the final instructions included the State's proposed self-defense instruction, which were apparently read to the jury without any objection.[4] Nowhere do the parties or the court acknowledge or discuss that the State's self-defense instruction requires that Williamson reasonably believed that Parker intended to inflict death or great personal injury. In closing, the State specifically highlighted the self-defense instruction and argued, "[s]o is it reasonable for you to believe that Mr. Williamson reasonably believed that the person whom force was used, so Mr. Parker, intended to inflict death or great physical injury. Is that what you saw? Is that what makes sense to you? Is that reasonable."

The jury found Williamson guilty of assault in the second degree. Williamson appeals.

## DISCUSSION

### Self-Defense Jury Instruction

Williamson contends that the State's proposed instruction improperly lowered its burden of proof. Williamson also alleges ineffective assistance of counsel because defense counsel failed to object to the instruction.

A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal. State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). Additionally, because the State must disprove self-defense when properly raised, as part of its burden to prove beyond a reasonable doubt that the defendant committed the offense charged, a jury instruction on self-defense that

---

[4] The verbatim report of proceedings indicate that the court read the instructions to the jury without transcribing what was read.

misstates the law is an error of constitutional magnitude and can be raised for the first time on appeal. Id.

Ineffective assistance of counsel claims "'present mixed questions of law and fact' and are reviewed de novo." State v. Vazquez, 198 Wn.2d 239, 249, 494 P.3d 424 (2021) (internal quotation marks omitted) (quoting State v. Lopez, 190 Wn.2d 104, 116, 410 P.3d 1117 (2018)). To prove ineffective assistance, a defendant must establish that their attorney's performance was deficient and that deficiency prejudiced them. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Generally, there is a strong presumption that counsel's performance is effective. Vazquez, 198 Wn.2d at 247.

To decide whether Williamson was denied effective representation, it must be determined whether the self-defense jury instruction provided misstated the law as Williamson alleges. See Kyllo, 166 Wn.2d at 863. Jury instructions are generally found to be sufficient if substantial evidence supports the jury instruction, the jury instruction allows the parties to argue their theories of the case, and the jury instructions, when read as a whole, properly inform the jury of the applicable law. State v. Clausing, 147 Wn.2d 620, 626, 56 P.3d 550 (2002). We review the adequacy of jury instructions de novo as a question of law. Id. at 626-27.

In Kyllo, Kyllo was charged with assault in the second degree and claimed self-defense based on his use of nondeadly force. Kyllo, 166 Wn.2d at 859, 863. The provided self-defense jury instruction stated that Kyllo had to have apprehended "great bodily harm" to succeed on his self-defense claim. Id. at 860. The court held that when nondeadly force is at issue, the jury should be informed according to RCW

9A.16.020(3), which states that "force upon or toward the person of another is not unlawful . . . [w]henever used by a party about to be injured."[5] See Id. at 863. As a result, the court found the instruction erroneous because it misstated the harm Kyllo had to apprehend. See Id. (citing State v. Walden, 131 Wn.2d 469, 477-48, 932 P.2d 1237 (1997)). In other words, Kyllo only had to have apprehended injury not great bodily harm.

Williamson's self-defense jury instruction is similarly erroneous. The court intended to instruct the jury based on Williamson's proposed self-defense instruction, which correctly followed WPIC 16.02. The record suggests that no one read the State's proposed instruction carefully enough to recognize that it was not the same as the instruction proposed by Williamson or paid close enough attention later when the instructions were read to the jury to notice the difference. The given instruction misstates the harm required because it required Williamson to apprehend death or great personal injury as opposed to injury. We see no strategic or tactical reason why counsel would not object to the court incorrectly stating the law and easing the State of its proper burden of proof on self-defense.

The next question is whether the deficient performance prejudiced Williamson. In other words, Williamson must show that "there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been

---

[5] RCW 9A.16.020(3) states:
The use, attempt, or offer to use force upon or toward the person of another is not unlawful in the following cases: . . .
(3) Whenever used by a party about to be injured, or by another lawfully aiding him or her, in preventing or attempting to prevent an offense against his or her person, or a malicious trespass, or other malicious interference with real or personal property lawfully in his or her possession, in case the force is not more than is necessary.

different." Id. at 862. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Williamson fails to meet his burden.

The video of the altercation speaks for itself. Williamson approaches Parker and hits Parker's head with his hand. Williamson alleged that he only reached for his knife after Parker reached toward his sheath. However, the video instead plainly shows Williamson did not commit the assault in apprehension to Parker reaching for his sheath. Rather, Williamson pressed up against Parker, pinning him to the bench and holding the knife up to his head after Parker had reached for his sunglasses to his left and sat back down, moving his empty right hand across his body. Parker continued to struggle with Williamson on top of Parker with the knife pointed at Parker's head. The video simply does not support Williamson's claim that he reasonably believed he was about to be injured and did not use any more force than was necessary to prevent such injury.

### Prosecutorial Misconduct

Williamson next contends that the State engaged in prosecutorial misconduct when questioning Sergeant Capps about whether Williamson was the initial aggressor. Williamson also alleges that defense counsel provided ineffective assistance because counsel failed to object to the State's questioning.

Prosecutorial misconduct claims are reviewed "in the context of the entire record and the circumstances at trial." State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). To prevail, the defendant must establish that the prosecutor's conduct was both improper and prejudicial. State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). It

10

is improper for a witness to offer opinion testimony regarding guilt because it is unfairly prejudicial and "invad[es] the exclusive province of the [jury]." State v. Demery, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001) (alterations in original).

Here, just as the trial court sustained Williamson's objection when a patrol officer was asked who was the aggressor, the trial court likely would have similarly sustained an objection had one been made when the prosecutor earlier asked Sergeant Capps the same question. Certainly, the video speaks for itself and there is no need for a witness who was not present during the altercation to testify as to what they saw on the same video shown to the jury. We need not address whether such testimony goes so far as expressing an opinion as to the defendant's guilt because, for the same reasons discussed above, Williamson fails to meet his burden of showing prejudice.

If defense counsel failed to object at trial, the error of a prosecutor's misconduct is waived unless the misconduct "was so flagrant and ill intentioned that an instruction [from the trial court] could not have cured the resulting prejudice." Emery, 174 Wn.2d at 760-61. Accordingly, the defendant must show that (1) an instruction would not have corrected the prejudice and (2) the prosecutor's misconduct resulted in prejudice that has a substantial likelihood of affecting the jury verdict. See Emery, 174 Wn.2d at 761. Additionally, the Supreme Court has recognized that a police officer's testimony "may be especially prejudicial because an officer's testimony often carries a special aura of reliability." State v. Hager, 171 Wn.2d 151, 159, 248 P.3d 512 (2011).

Even if the questioning was determined to be so flagrant and ill-intentioned that an instruction would not have cured the resulting prejudice, Williamson has not shown

11

that the misconduct resulted in prejudice that had a substantial likelihood of affecting the jury verdict.

We affirm.

_____
Cohen, J.

WE CONCUR:

_____        _____
Feldman, J.                             Mann, J.