# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  60708-5-II |
| Respondent, | |
| v. | |
| JOHN DAVID ZELLER, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — John D. Zeller appeals his convictions and sentence for four counts of first degree possession of depictions of a minor engaged in sexually explicit conduct and one count of second degree possession of depictions of a minor engaged in sexually explicit conduct.  He argues that there was insufficient evidence of his knowledge to support his convictions and that he received ineffective assistance of counsel at sentencing.  We disagree and affirm Zeller's convictions and sentence.

## FACTS

In January 2020, Vancouver Police received a cyber tip reporting suspicious activity from an IP address in Vancouver, Washington.  Vancouver Police determined that the internet protocol (IP) address belonged to someone living in Zeller's residence.  After executing a search of Zeller's residence, the police found images and videos of children engaged in sex acts.

The State charged Zeller with four counts of first degree possession of depictions of a minor engaged in sexually explicit conduct and one count of second degree depictions of a minor engaged

in sexually explicit conduct. Zeller waived his right to a jury trial, and a bench trial took place on April 8, 2024.

A.   TRIAL

1.   Background

Officer David Jensen testified that in January 2020, he began investigating a cyber tip related to an IP address in Vancouver. Officer Jensen determined that the IP address belonged to someone who resided in Vancouver and that email address associated with the reported IP address listed "John Zeller" as the name on the account. Verbatim Rep. of Proc. (VRP) (Apr. 8, 2024) at 62.

In December 2020, police executed a search of Zeller's residence. Eric Thomas, who was a Senior Digital Forensic Investigator, participated in the search.

2.   Search of Zeller's Residence

During the search of Zeller's residence, police found a business card promoting Zeller's information technology (IT) services. The police also searched the office in the residence.

In the office, police found a desktop with two monitors. Thomas explained that in addition to the desktop, police found data, tools, and other items that would normally be found in an IT office. For example, Thomas testified that over 15 hard drives were found, which he explained was not typical in a "normal user's home." VRP (Apr. 8, 2024) at 115. And police found tools that are generally used for IT administration, such as tools for working on laptops, desktops, or networking. Police also found a server located in the office closet, which was connected to the desktop.

3.      Forensic Analysis

Thomas conducted a forensic triage of the devices in Zeller's residence. Thomas testified that Zeller ran virus protections on his devices and that Zeller's devices were password-protected. Thomas also testified about the details of his forensic analysis of the hard drives and an external storage device found in Zeller's residence.

During Thomas' testimony, the State presented a slideshow of the images and videos found on various devices recovered during the search of Zeller's residence. Thomas described how these images and videos were stored based on their file structure on the hard drives. He explained that the top level of the file structure, or the root, generally includes different drives or servers with corresponding letters. Each drive or server has underlying files or folders that can be described as shallow or nested. For example, a file structure would be shallow if a file or folder was located in proximity to the root. In contrast, if multiple files or folders are nested within each other, they become farther from the root, so it is less "obvious . . . what is there." VRP (Apr. 8, 2024) at 112.

Thomas discussed an image from a blue hard drive. He explained that this image was in a folder that was located just one level from the root, and the folder was titled "[L]ittle [N]ew." VRP (Apr. 8, 2024) at 146. Thomas also discussed a video found in the blue hard drive. He explained that the video was stored in a folder called "[L]ittle [V]ideo" that was located one level from the root. VRP (Apr. 8, 2024) at 145. The video in the Little Video folder was named "BabyJ-Little-shot.avi." VRP (Apr. 8, 2024) at 145. Thomas testified that "Baby J" is "a catch-all for infant abuse and infant images." VRP (Apr. 8, 2024) at 145.

Thomas also testified about an image found on an external storage device. The image was located off a partition[1] named "[N]ew [V]olume" and stored in a folder called "[L]ittle." VRP (Apr. 8, 2024) at 149. He clarified that the Little folder was one level from the New Volume partition.

Thomas also examined a hard drive with a white label. He identified an image and a video found on this hard drive. The image was in a folder labeled "[L]ittle [N]ew." VRP (Apr. 8, 2024) at 148. The video was in a folder named "[L]ittle [V]ideo," which was one level from the drive letter.[2] VRP (Apr. 8, 2024) at 148. He clarified that this was a shallow file structure.

To explain the significance of the location of the images and videos found on the devices, Thomas testified:

> [T]hey were immediately off of the root of that directory, which means that if someone were to put this hard drive onto their [personal computer], . . . it would show the folders and the folder would be [/L]ittle or [/L]ittle pic or [/L]ittle new, . . . as seen in these. And then right under there are the images and the videos. So they are not—for lack of a better word—buried far. They would be immediately apparent to someone that was . . . opening that drive.

VRP (Apr. 8, 2024) at 151. The Little folders contained depictions of minors engaged in sexually explicit conduct.

Thomas distinguished the organization of the files containing depictions of minors engaged in sexually explicit conduct from those files containing legal adult materials. Specifically, the files containing adult pornography were stored in folders named after websites, but the folders

---

[1] Portions of a hard drive may also be described as a "partition"—a logical subset or portion of a particular hard drive. VRP (Apr. 8, 2024) at 144.

[2] Portions of a hard drive may also be allocated to and assigned a particular drive letter.

containing depictions of minors engaged in sexually explicit conduct were stored in folders titled Little.

In addition, Thomas testified that two of the hard drives included folders titled "[M]e." VRP (Apr. 8, 2024) at 153. The Me folders contained images of Zeller, clothed and unclothed. These folders were located off the same root as the Little and Little New folders. Thomas stated that all the folders off the root were organized alphabetically.

During closing argument, the State argued that based on the file structure and the names of the folders, any user would know fairly immediately where the folders were located and what they contained. Defense counsel argued that there is no evidence Zeller ever viewed or accessed the images.

4.      Conclusion of Trial

In its findings of fact and conclusions of law, the trial court found that Zeller knowingly possessed visual matter depicting a minor engaged in sexually explicit conduct. Specifically, the trial court found that Zeller knowingly possessed an image and a video on the blue hard drive, an image on the external storage device, and an image and a video on the hard drive with a white label.

The trial court made additional findings as to the knowledge requirement. The trial court found that Zeller was an IT professional and marketed himself as such and that his technological setup was "more than that of the average homeowner." Clerk's Papers (CP) at 103. The trial court also found that the office desktop computer controlled a server which was password-protected with the username "jzeller." CP at 103. Accordingly, the trial court found that the State proved beyond

a reasonable doubt that the devices containing the depictions were maintained and controlled by Zeller.

Further, the trial court found that the file structure of the folders containing the depictions of minors engaged in sexually explicit conduct was set up one level from the root and that the files were organized alphabetically. The trial court noted that the organization of the files containing the depictions of minors differed from files containing legal adult materials. Also, the trial court found that the file names included Little Video, Little New, Little, and Little Pic. And the trial court found that a folder named Me was located directly off the same root on the external storage device and contained images of Zeller, clothed and unclothed. The trial court noted that "L" immediately precedes "M" alphabetically and found that "[t]his demonstrates beyond a reasonable doubt that Mr. Zeller knew that the child sex abuse material was on the devices he maintained and controlled." CP at 103. And the trial court found that the use of the word Little in the file names indicated Zeller's knowledge that the persons depicted in the images and videos were minors.

Accordingly, the trial court found Zeller guilty of four counts of first degree possession of depictions of a minor engaged in sexually explicit conduct and one count of second degree possession of depictions of a minor engaged in sexually explicit conduct.

B.   SENTENCING

Zeller's defense counsel argued that Zeller should receive an exceptional sentence below the sentencing range. In Zeller's sentencing memorandum, defense counsel highlighted the trial court's authority under RCW 9.94A.535 to impose a sentence outside the standard range if there are substantial and compelling reasons justifying an exceptional sentence. Defense counsel further

informed the trial court that RCW 9.94A.535 provides eleven illustrative mitigating factors to support a sentence below the standard range.

To support Zeller's request for an exceptional sentence, defense counsel argued that the Washington Legislature failed to adapt to the science related to certain sex offenses, that federal courts often reduce sentences for similar offenses, that the State strategically charged multiple offenses to increase Zeller's sentencing range, and that Zeller was not likely to reoffend. In addition, defense counsel informed the trial court that Zeller had a difficult childhood because he was placed in foster care due to his mother's alcoholism. And defense counsel attached letters of support and a newspaper article to the memorandum that discussed Zeller saving several people from a fire.

After hearing the parties' arguments, the trial court noted that Zeller "had stuff going on at an early age . . . one parent gone and the other one an alcoholic." VRP (July 15, 2024) at 225. The trial court also acknowledged the letters of support, stating, "You've done things in the past . . . where other people were looking to you. . . . [Y]ou're a responsible person; you're a helpful person; you're a caring person. I don't know if I could rush into a burning duplex and tell people to get out." VRP (July 15, 2024) at 225. However, the trial court ultimately determined that a downward departure was not appropriate and imposed a standard range sentence of 77 months in custody and 36 months of community custody.

Zeller appeals.

## ANALYSIS

Zeller argues that there was insufficient evidence that he knowingly possessed the images on his hard drives to support his convictions. Zeller also argues that he received ineffective

7

assistance of counsel because his defense counsel failed to specifically argue mitigating factors under RCW 9.94A.535 at sentencing. We disagree.

A.    SUFFICIENCY OF THE EVIDENCE

Zeller does not argue that the images and videos on his devices do not constitute visual or printed matter depicting a minor engaged in sexually explicit conduct. Instead, Zeller contends that there was insufficient evidence that he knowingly possessed the images on his computer hard drives. We disagree with Zeller's contention.

1.    Legal Principles

When determining whether evidence is sufficient to support a criminal conviction, the applicable inquiry is whether "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Roberts*, 5 Wn.3d 222, 231, 572 P.3d 1191 (2025) (emphasis in original) (quoting *Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). "[J]udicial review includes '*all of the evidence*' considered in a light most favorable to the prosecution." *Id.* (emphasis in original) (quoting *Jackson,* 443 U.S. at 318-19.)

"When a criminal defendant challenges sufficiency of the evidence, 'all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant.'" *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)), *cert. denied*, 589 U.S. 1148 (2020). "'Circumstantial evidence and direct evidence are equally reliable in determining the sufficiency of the evidence.'" *Id.* (internal quotation marks omitted) (quoting *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010)). Because courts rarely have direct evidence of a defendant's mental

state, it "is typically proved through circumstantial evidence." *See State v. Vasquez*, 178 Wn.2d 1, 8, 309 P.3d 318 (2013).

To convict Zeller of possession of depictions of a minor engaged in sexually explicit conduct, the State had to prove that Zeller knowingly possessed visual or printed matter depicting a minor engaged in sexually explicit conduct as defined by statute. RCW 9.68A.070(1)(a), (2)(a). The State must prove possession with knowledge of the nature of the illegal material. *State v. Garbaccio*, 151 Wn. App. 716, 734, 214 P.3d 168 (2009), *review denied*, 168 Wn.2d 1027 (2010). Under RCW 9A.08.010(1)(b), "[a] person knows or acts knowingly or with knowledge when . . . [h]e or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or . . . [h]e or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense."

2.      Sufficient Evidence of Knowledge

Zeller argues that there was insufficient evidence that he knowingly possessed the images on the hard drives "because the evidence was insufficient to prove that Mr. Zeller had viewed, downloaded, or even knew the depictions were on his computer hard drives." Br. of Appellant at 11. Zeller's argument is not persuasive.

Here, there was sufficient evidence that Zeller knew he had images of minors engaged in sexually explicit conduct on his devices. Specifically, the evidence shows that the images and videos were stored on Zeller's devices; Zeller marketed himself as an IT professional; Zeller restricted access to the devices by password protecting the devices; the images and videos were located in folders conspicuously named as Little, Little Video, and Little New; and it was "immediately apparent to someone that was . . . opening that drive" that the images and videos

were depictions of minors engaged in sexually explicit conduct. VRP (Apr. 8, 2024) at 151. Also, the images and videos were located in a shallow file structure on Zeller's devices; the folders were proximate to the root; the folders were in proximity to the Me folder containing images of Zeller himself, clothed and unclothed; the folders containing the images and videos of minors (named with Little titles) were named differently from those containing legal adult materials, which were named after websites; and the images and videos were immediately accessible in the folders.

From this evidence, viewed in the light most favorable to the State, a rational trier of fact could reasonably infer that because Zeller controlled the devices, he controlled the content of materials in the folders, and therefore, Zeller was aware of the contents of the folders and had knowledge that there were images and videos of minors engaging in sexually explicit conduct on his devices.

B.    INEFFECTIVE ASSISTANCE OF COUNSEL

Zeller also argues that he received ineffective assistance of counsel at sentencing because his defense counsel failed to argue mitigating factors under RCW 9.94A.535. Specifically, Zeller contends that defense counsel's performance was deficient because "[d]efense counsel should have alerted the court to the specific language [in RCW 9.94A.535] and emphasized Mr. Zeller's remarkable act of saving people from [a] fire and [his] childhood trauma." Br. of Appellant at 20-21. We disagree that Zeller received ineffective assistance of counsel at sentencing.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantees the right to effective assistance of counsel. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). To prevail on an ineffective assistance of counsel claim, the appellant must show that defense counsel's performance was deficient and that the

deficient representation caused prejudice. *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024); *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Counsel's performance is deficient when it "falls 'below an objective standard of reasonableness.'" *Estes*, 188 Wn.2d at 458 (quoting *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)). "Defense counsel's performance is not deficient if it is a 'legitimate trial strategy or tactic[].'" *Bertrand*, 3 Wn.3d at 128 (alteration in original) (quoting *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009)). There is a "'strong presumption that defense counsel's performance was reasonable.'" *Id.* (quoting *Kyllo*, 166 Wn.2d at 862). A "defendant can rebut the presumption of reasonable performance by demonstrating that 'there is no conceivable legitimate tactic explaining counsel's performance.'" *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)), *cert. denied*, 574 U.S. 860 (2014).

To show prejudice, the appellant must show that "'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Id.* at 34 (quoting *Kyllo*, 166 Wn.2d at 862). A reasonable probability is that which is "'sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

RCW 9.94A.535 allows a trial court to impose a sentence outside the standard range if there are substantial and compelling reasons to do so. The statute provides that "[t]he court may impose an exceptional sentence below the standard range if it finds that mitigating circumstances are established by a preponderance of the evidence." RCW 9.94A.535(1). The statute lists eleven nonexclusive mitigating circumstances. RCW 9.94A.535(1). Courts have recognized additional

mitigating circumstances such as a defendant's youth and the de minimis nature of a crime. *See State v. O'Dell*, 183 Wn.2d 680, 696, 358 P.3d 359 (2015) (youth as a possible mitigating circumstance); *State v. Thomason*, 199 Wn.2d 780, 790, 512 P.3d 882 (2022) (de minimis nature of a crime constituting a mitigating factor).

Zeller's contention that defense counsel's performance at sentencing was deficient is not persuasive. At sentencing, defense counsel sought an exceptional sentence below the standard sentencing range, specifically directing the court in the sentencing memorandum to RCW 9.94A.535 and the "eleven illustrative and non-exclusive reasons for imposing a sentence below the standard sentencing range." CP at 127. And when arguing for an exceptional sentence downward, defense counsel presented an argument based on a legislative report that showed offenders of similar crimes were less likely to reoffend than those who commit contact sexual offenses, argued that federal courts often reduce sentences for similar offenses, contended that the State strategically charged multiple offenses to increase Zeller's sentencing range, and emphasized that Zeller was not likely to reoffend. Defense counsel's decision to argue for an exceptional sentence in this manner can be characterized as a legitimate strategy or tactic. Zeller bears the burden of showing that there is no conceivable legitimate tactic explaining counsel's performance. Zeller fails to meet that burden.

Moreover, Zeller cannot show prejudice. Zeller contends that had defense counsel "framed Mr. Zeller's positive attributes and accomplishments as an unenumerated mitigation factor," "it is possible that the [trial] court would have found" those positive attributes and accomplishments supportive of a sentence below the standard sentencing range. Br. of Appellant at 21. While defense counsel did not expressly label the information as "mitigating factors," the record shows

that Zeller's counsel did provide to the court letters of support and a newspaper article about Zeller saving people from a fire. The record also shows that the trial court did consider Zeller's positive attributes and accomplishments reflected in the letters of support and the newspaper article, but the court expressly found that they did not support an exceptional sentence below the standard sentencing range. The trial court expressly acknowledged Zeller's letters of support and Zeller's heroic deed, stating that "[Zeller has] done things in the past though where other people were looking to [Zeller]. . . . [Zeller is] a responsible person; [Zeller is] a helpful person; [Zeller is] a caring person. I don't know if I could rush into a burning duplex and tell people to get out." VRP (July 15, 2024) at 225.

Accordingly, the trial court was aware of and considered the information that Zeller now argues defense counsel should have labeled as mitigating factors, but the trial court still declined to impose an exceptional sentence, finding that an exceptional sentence downward was not appropriate. Therefore, Zeller cannot show prejudice. Zeller's ineffective assistance of counsel argument fails.

CONCLUSION

Because there was sufficient evidence that Zeller knowingly possessed the images and videos of minors engaged in sexually explicit conduct and because Zeller did not receive ineffective assistance of counsel at sentencing, we affirm Zeller's convictions and sentence.

No. 60708-5-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, P.J.

Che, J.

14